IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AMBER SMITH AND BRANDON SMITH, | ) | |
| as Natural Parents and Next Friends of their | ) | |
| minor child, E.S. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No.        23-cv-2192 |
| | ) | |
| TARGET CORPORATION. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

Plaintiffs Amber Smith and Brandon Smith as Natural Parents and Next Friends of their minor child, E.S., by and through their undersigned counsel of record, hereby file this Complaint for Damages, Plaintiffs allege and state as follows:

### Parties, Jurisdiction, and Venue

1.      Plaintiffs are all citizens residents of the State of Kansas, in Johnson County.

2.      Defendant Target Corporation ("Target") is a publicly traded corporation that reported $107.6 Billion in sales during its fiscal year 2022. Target is organized and existing under the laws of the State of Minnesota, with its headquarters and principal place of business also in the State of Minnesota. Defendant Target is registered to do business in the State of Kansas and maintains a registered agent for service of process in the State of Kansas. Additionally, defendant Target also operates "brick-and-mortar" retail stores within the State of Kansas, including the Target store at 6100 Broadmoor in Mission, Kansas where Plaintiffs purchased the microwave bowl at issue in this case.

3.      Defendant Target designed, manufactured, marketed, promoted, and sold the "Pillowfort" labeled, microwave bowl that is the subject of this lawsuit.

4.      Defendant Target was present and transacted, solicited, and conducted business in Kansas, through its employees, agents and/or sales representatives and derived revenue from its business in the State of Kansas. In fact, in its Annual Report 10-K SEC filing for 2022, Target says it has 17 stores in Kansas comprising 2.385 million square feet of retail space.

5.      Defendant Target maintains a highly interactive website that can be visited by residents of the State of Kansas and which was directed at consumers in Kansas and elsewhere for Target's expected profit.

6.      At all times relevant to the claims herein, Defendant Target placed the defective subject microwave bowl into the stream of interstate commerce knowing and expecting that it would end up in the State of Kansas and cause injury in Kansas to residents of the State of Kansas. Defendant Target purposefully directed marketing and sales efforts toward the State of Kansas and had the intent to sell products, including the subject microwave bowl, in the State of Kansas.

7.      Accordingly, Defendant Target is conclusively presumed to have been doing business in this state and subject to Kansas long arm jurisdiction.

8.      On information and belief, Defendant Target also either owns and/or leases real estate in the State of Kansas for its multiple retail stores in Kansas and entered into other contracts in the State of Kansas in connection with its retail operations in the State.

9.      Defendant Target therefore has continuous, systematic, and substantial contacts with the State of Kansas by virtue of maintaining its many retail stores in Kansas as outlined above, among other activities within the State whereby it purposely directs its activities toward the State

of Kansas and purposely availed itself of the benefits and protections of Kansas law, subjecting

Defendant Target to personal jurisdiction in this Court.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as the



7/6/2021                                                                 Pillowfort | news

**Calling All Parents & Kids: Pillowfort is the Home Collection of Your Dreams**

February 7, 2016

Launched in February 2016, Pillowfort is Target's stylish home collection for kids, with thousands of mix-and-match pieces at great prices. The assortment was designed to grow with a child's sense of individuality. **Shop Pillowfort**.

13.     A review of Target's website reveals there are indeed, "thousands" of Pillowfort

Details      Shipping & Returns      Q&A (1)



14.     A picture of the point-of-sale tag attached to a package of 6 Pillowfort kids bowls below also says they are "dishwasher and microwave safe," and "BPA free."



15.     A picture taken of the bottom of a Pillowfort bowl just like the one that injured plaintiff E.S. in this case, and that was bought by Plaintiffs at or near the same time as the subject

bowl is shown below, clearly representing to the customer that it is "DISHWASHER SAFE," "MICROWAVE SAFE," and "BPA FREE."



16.     A picture and description from Defendant Target's website of a microwave bowl believed to be the same or very similar to the one that E.S. was using when she was injured on June 13, 2021.



15.5oz Plastic Kids Bowl Light Blue - Pillowfort™

233 | 1 Question

$0.50

Ship it

Details    Shipping & Returns    Q&A (1)

Details    Shipping & Returns    Q&A (1)

**Description**

Add a fun spin to your kid's mealtime with this bright Plastic Kids Bowl from Pillowfort™. This plastic bowl comes with soft, rounded edges that are easy to grip, making this kid-friendly bowl the perfect addition to their table setting. The convenient depth makes it easy to add in their cereal or noodles without any messy spillovers. This BPA-free bowl is designed to last, while the dishwasher-safe feature makes for quick and fuss-free cleanups.

17.    Below are the "specifications" Target gives for its Pillowfort kids bowl online,

**Specifications**

**Features:** Round (shape)

**Number of Pieces:** 1

**Dimensions (Overall):** 5 Inches (L), 2 Inches (H) x 5 Inches (W)

**Capacity (Volume):** 15.5 Ounces

**Features Dining:** Break-Resistant, BPA-Free

**Service For:** 1

**Material:** Polypropylene

18.     Along with the specifications above, Target's website lists yet another representation of Microwave safety, this one specifically, states: "***Safe for microwave cooking***."



19.     On June 13th, 2021, Plaintiff E.S. was using the subject microwave bowl in the microwave in a foreseeable manner. Unbeknownst to Plaintiff, the bottom of the bowl had burned and melted through, such that when removing the from the microwave, a portion of the bottom molten hot plastic literally dropped out the bowl onto Plaintiff's hand, leg and foot, causing full thickness "third degree burns." These injuries are both serious and permanent, leaving E.S. with scarring and disfigurement.

20.     Plaintiffs relied on Defendant Target's specific representations that the bowl was "Safe for microwave cooking."

21.     Th_____owls, i___
to be "Safe for _____nade to ___
temperatures in a ___

22.     The subject microwave bowl sold by Defendant Target is defective and unreasonably dangerous as sold and labeled because it was not safe for microwave cooking in that it could catch fire or melt while in the microwave, seriously injuring an unsuspecting consumer or user when they removed the bowl from the microwave, in the same fashion Plaintiff E.S. was seriously hurt in June 2021.

23.     Defendant Target received notice that its microwave bowls were defective and unreasonably dangerous at least in part because many of its customers posted reviews on Target's own website to report that their microwave bowls melted and/or burned in the same way that Plaintiff's did on June 13th, 2021. In fact, some consumers even posted photographs of the failure to their microwave bowls directly onto Target's website, and their pictures reveal a fracture almost identical to the one that caused Plaintiff's serious injuries. Examples of such postings from Target's website are shown below.



**Melted in my microwave, but otherwise pretty good...**

★★★☆☆

Oops - 1 year ago

The light teal one melted in my microwave. I accidentally burned a few mini potatoes and one almost went straight through the bowl. I've been stuck wearing a mask in my apartment night and day all of today and yesterday, and I'm trapped in bed now with a migraine despite it. It's been almost two whole days and my home still reeks of melted plastic. But they've been fine up until now. Sometimes if I have salad with oil or something with butter, I have to scrub the bowl twice to get the greasy feeling out, but it DOES come out. And the bowls have never even really gotten hot to touch in the microwave until this incident. I do plan on replacing the light teal one instead of ditching my bowls and getting all new ones because of this. I use the plates that go with them and it's really bothering me having an uneven set now lmaooo. Overall they're great for cold foods and nuking things under 4 minutes. I'm just never putting them in for longer ever ever again :/ I don't trust they're 100% microwave safe anymore—here's hoping they're really BPA free.

 **Easy to clean** out of 5      **Design** out of 5     Quality out of 5

Value

24.     Other products in the Pillowfort kids dinnerware line, which had the same specifications of polypropylene plastic and marked safe for microwave cooking, believed to be

made from the exact same material as the subject bowl, also had customer reviews showing pictures of how they melted under foreseeable microwave cooking uses.



I initially liked it a lot because it's small and lightweight - perfect for small meals or snacks. It stains easily though, and my Hot Pocket melted a hole completely through it despite being "microwave safe".



1 guest found this review helpful. Did you?

| Helpful | Not helpful |

Report review

25.     On information and belief, Target had additional notice and knowledge about the defects in its microwave bowls including other sources such as actual custody of returned products that were broken by customers who returned them for a refund or replacement, as well as other communications with consumers and potentially even other claims and lawsuits for injuries.

26.     While the above descriptions continued to be present on Target's website even after Plaintiff E.S.'s injuries, well into 2022, at some point, Target changed the way it talks about the

microwave worthiness of these products. Target's website in April of 2023 now describes them as "Microwave-safe for reheating only."

27.     Tragically, Plaintiffs did not know what Target already knew about its defective and unreasonably dangerous microwave bowl at the time they bought it. Plaintiff Amber Smith purchased the microwave bowl in-person at Target's store in Mission, Kansas and did not have the benefit of having seen the reviews and photos posted by reviewers on Target's website.

28.     Below is a picture of Plaintiffs' microwave bowl after the failure it experienced, melting in the microwave, which caused E.S.'s injuries.



29.     Plaintiff has suffered a variety of damages and losses as a direct and proximate result of the defective condition of the subject microwave bowl, as pled more fully herein.  All of these harms and losses have been suffered in the past and will continue to be suffered in the future.

30.     In the ordinary course of its business, Defendant Target designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the subject microwave bowl described more fully above.

31.     Alternatively, Defendant Target is also deemed the same as the manufacturer of the subject bowl under U.S. law by virtue of importing it from China under 16 C.F.R. § 1009.3. Additionally, because Target marketed and sold the subject bowl under its own trade name, bearing its "target symbol," as well as Target's own "Pillowfort" line label, is held to the same liability as though it were the manufacturer under operation of common law, such as Restatement 2d Torts § 400 and Restatement 3d Products Liability § 6.

### COUNT I: "Product Liability Claim" – Sounding in Strict Products Liability<br>Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq*.

32.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

33.     The injuries to Plaintiff E.S. resulted from the defective conditions of the subject microwave bowl.

34.     The defective conditions of the microwave bowl that were a cause of the injuries to E.S. were unreasonably dangerous.

35.     The conditions of the Microwave bowl that are complained of herein, existed at the time it left Defendant Target's control.

36.     At all relevant times, the subject Microwave bowl was in a defective and unreasonably dangerous condition by reason of its design and manufacturing, thereby exposing foreseeable users to unreasonable risk of harm, such as Plaintiff, E.S., especially to other minor children as Target specifically marketed this product to children.

37.     The Microwave bowl was further defective and unreasonably dangerous by reason of its lack of adequately designed warnings and instructions provided with the product at the time of sale and distribution.

38.     The Microwave bowl was in an unsafe, defective, and unreasonably dangerous condition at the time it left Defendants' control.  The defective conditions which were responsible for Plaintiff E.S.'s injuries were present at the time the bowl left Defendant's control, and the bowl was in substantially the same condition at the time of the incidents described herein, as they were in when the product left Defendant Target's control.

39.     The subject microwave bowl was expected to and did reach the usual consumers, handlers and persons coming into contact with the product – including Plaintiff – without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed and marketed by Defendant Target.

40.     The Microwave bowl's unsafe, defective, and inherently dangerous condition was a direct and proximate cause of the injuries suffered by Plaintiff.

41.     The design and manufacturing of the Microwave bowl rendered it dangerous to an extent beyond that which would be contemplated by an ordinary consumer with ordinary knowledge common to the community as to its characteristics, even when used in a manner that was foreseeable to or reasonably anticipated by Defendant Target.

42.     Plaintiff E.S.'s injuries, damages, and losses suffered thereby, resulted from a use of the microwave bowl that was intended by and/or reasonably foreseeable to Defendant Target.

43.     At all relevant times, the Microwave bowl posed a risk of danger inherent in the design that was reasonably anticipated by and foreseeable to Target, and which greatly outweighed the benefits of that design.

44.     The subject microwave bowl lacked sufficient utility for any group of consumers, including Plaintiff.

45.     The microwave bowl's design and manufacture were defective and unreasonably dangerous due to *inter alia*:

    a.  The design choice of material was not able to remain intact and stable, such that they would not catch fire and/or melt, while being used as directed on the product, as being claimed "Safe for microwave cooking."  Therefore, these design choices rendered the bowl insufficiently robust to handle the forces, stresses, and temperatures that a microwave bowl is expected and intended to handle;

    b.  The specific design of the subject microwave bowl was not designed with sufficient resiliency to heat for safe use in a microwave bowl application;

    c.  The subject microwave bowl did not contain adequate warnings or instructions about the design's strength limitations and lack of safety for use in microwave cooking, which was directly contrary to the labeling of the product, and

    d.  Alternatively, or in addition to the design defects above, the subject microwave bowl contained a manufacturing defect in that the chemical makeup in the product departed from the specifications, or there were flaws from the manufacturing processes involved, that created areas that would fatigue and fracture or otherwise fail when it experience the kinds of forces that are intended and foreseeable for a microwave bowl tool and it was these weak spots on which the tool failed while being used by Plaintiff as pled herein.

46.     As designed, manufactured, warned, sold, and supplied by Defendant Target, the subject microwave bowl is defective and unreasonably dangerous and was so when it was placed into the stream of commerce by Defendant.

47.     Feasible available alternative designs and warnings existed that would have prevented Plaintiff's injuries.

48.     As a direct and proximate result of the defects in the design, manufacture and warnings of Defendant Target's microwave bowl Plaintiff E.S. was seriously injured and suffered the resulting damages and losses as pled herein. Such losses include, but are not limited to: having to undergo painful and complex medical procedures and surgeries on her hand and foot for treatment of her injuries, severe pain, suffering, disfigurement, and loss of use of her foot and hand, scarring, mental anguish and emotional suffering, and loss of the enjoyment of life in the past and in the future.

49.     As pled herein, Defendant Target knew or should have known about the defective and unreasonably dangerous condition of the subject microwave bowl well before it was purchased by Plaintiffs. With respect to the design, manufacture, warning, instruction, marketing and sale of the subject microwave bowl, Defendant Target acted in a willful, wanton and reckless manner with respect to the safety of users of its Pillowfort kids microwave bowls sufficient to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiffs pray for Judgment against Defendant on Count I of their Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages, for interest on any judgment entered, for their costs herein, and for such other and further relief as the Court deems just and proper.

## COUNT II: "Product Liability Claim" – Sounding in Negligence
## Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq.*

50.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

51.     The Defendant developed, designed, tested, assembled, manufactured, labeled, distributed, marketed, advertised and sold the subject microwave bowl in the ordinary course of its business.

52.     Defendant, as a designer, manufacturer, marketer, distributor and seller of the subject microwave bowl had a duty to use that degree of reasonable care that would be exercised by an expert product manufacturer in the design, manufacture, testing, assembly, labeling, distribution, marketing, sale and post-sale conduct relating to such products, including the subject microwave bowl.

53.     At the time Defendant sold the subject Microwave bowl, it was in a defective and unreasonably dangerous condition by reason of its design and manufacturing, thereby exposing foreseeable users to unreasonable risk of harm, such as Plaintiff.  The microwave bowl was further defective and unreasonably dangerous by reason of its lack of adequately designed warnings and instructions provided with the product at the time of sale and distribution.

54.     Defendant Target had a duty to use that degree of skill, care, caution, and expertise as that of a reasonably prudent and careful expert product manufacturer to design, manufacture, market, and sell a product that was not unreasonably dangerous for its normal, intended use.

55.     The subject microwave bowl was defective and unreasonably dangerous, and Defendant Target knew or had reason to know that it was defective and unreasonably dangerous when used in the form and manner as provided by Defendant.

56.     Defendant Target knew or should have known that its Microwave bowl was in a defective condition and was and was unreasonably dangerous.

57.     Defendant Target failed to complete adequate pre-market testing and post-market surveillance on the subject microwave bowl.

58.     Defendant failed to use the degree of care, skill and learning that would be used by an ordinarily careful expert in Defendants' business in its design, manufacture, testing, assembly, labeling, distribution, marketing, sale, and post-sale of the subject microwave bowl in a number of respects including, but not limited to, the following acts and omissions:

a.  Negligently designing, manufacturing, labeling, and selling the subject microwave bowl in a defective condition that was unreasonably dangerous when put to reasonably anticipated uses when Defendant knew or by exercising due care could have discovered the subject product's dangerous condition;

b.  Negligently designing the subject microwave bowl in ways that rendered it defective and unreasonably dangerous in numerous respects, including but not limited to: failing to comply with industry practices or standards;

c.  Negligently, carelessly, or recklessly failing to adequately test and investigate the defective and unreasonably dangerous condition of the subject microwave bowl;

d.  Failing to adequately test the subject microwave bowl's performance in foreseeable real world uses for microwave bowls;

e.  Failing to utilize one of the available and feasible alternative designs on the market for microwave bowls and / or failing to design its own microwave bowl

such that it would perform in a non-defective and reasonably safe fashion to those safer alternative designs already on the market;

f. Selling the subject product in a defective condition without giving reasonable warning of latent dangers in the reasonably foreseeable uses thereof – dangers Defendant knew or in the exercise of reasonable care could have known;

g. Failing to conduct any post-sale warnings campaigns on its defective and unreasonably dangerous microwave bowls after learning that consumers were experiencing a number of failures in the product that posed an unreasonable risk of harm to other consumers and users like Plaintiff E.S.;

h. Failing to provide adequate warnings or disclosure of the dangerous defects in the subject microwave bowl to Plaintiff after the time of its original sale but before Plaintiff's injuries, and

i. Failing to discharge its duties to recall and retrofit under applicable law.

59.    As a direct and proximate result of Defendant's acts and omissions and those of its principals, agents, workers, servants, and/or employees, Plaintiff E.S. was seriously injured and suffered the resulting damages and losses as pled herein. Such losses include, but are not limited to: having to undergo painful and complex medical procedures and surgeries on her hand and foot, severe pain, suffering, disfigurement, and loss of use of her hand and foot in the past, scarring, mental anguish and emotional suffering, and loss of the enjoyment of life in the past and future.

60.    As pled herein, Defendant Target knew or should have known about the defective and unreasonably dangerous condition of the subject microwave bowl well before it was purchased by Plaintiff Amber Smith and, with respect to Defendant's acts and omissions and those of its principals, agents, workers, servants, and/or employees in the design, manufacture, warning,

instruction, marketing and sale of the subject microwave bowl – Defendant Target acted in a willful, wanton and reckless manner with respect to the safety of users of its microwave bowls sufficient to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiffs pray for Judgment against Defendant on Count II of their Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages, for interest on any judgment entered, for their costs herein, and for such other and further relief as the Court deems just and proper.

### COUNT III: Breach of Warranty and Deceptive Act Claims
### Pursuant to the Kansas Consumer Protection Act, K.S.A. § 50-623, *et. seq*.

61.     Plaintiff incorporates herein by reference as if fully set forth herein, each and every allegation set forth above.

62.     Plaintiffs Amber and Brandon Smith and E.S. are "consumers" of the subject microwave bowl as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(c).

63.     Defendant Target is a "supplier" of the subject microwave bowl as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(j).

64.     The sale of the subject microwave bowl by Defendant Target was a "consumer transaction" as defined by the Kansas Consumer Protection Act, K.S.A. § 50-624(j).

65.     The condition of the subject microwave bowl constituted various breaches of warranties under the Kansas Consumer Protection Act, and those breaches were a cause of the injuries to Plaintiff E.S. and her resulting damages as pled herein. Those warranty breaches include both express and implied warranties as defined within the Kansas Consumer Protection Act for the reasons pled more fully herein as constituting the product's defective and unreasonably dangerous

design and manufacturing, and Defendant Target's negligence in the design, testing, marketing and sale of the subject Microwave bowl loader, which are incorporated herein by reference.

66.   The sale of the subject microwave bowl by Defendant Target was a deceptive act as defined in the Kansas Consumer Protection Act, K.S.A. § 50-626(b), in various respects, including but not limited to the fact Defendant represented that the subject microwave bowl was of a particular standard, grade, quality, style, or model when in fact its condition departed materially from the representations. Defendant Target specifically and repeatedly represented that the subject Microwave bowl was safe for "microwave cooking" and "microwave safe" when in fact it was not given its defective and unreasonably dangerous design that allowed the bowl to fail catastrophically while being used in a foreseeable and, in-fact, intended manner in a microwave. In other words, Defendant Target, by its representations pled herein, among others, that the subject Microwave bowl was: dishwasher safe, microwave safe, and BPA free" and was even "Safe for Microwave cooking," and generally that it was robust and heat resistant enough to be safely used as a bowl for cooking in the microwave. These representations and others made at the point of sale prove that Target represented the subject Microwave bowl:

  a.   had characteristics, uses, and benefits that it did not have;

  b.   was of a particular quality when it was of another that differed materially from the representation, and

  c.   willfully misrepresented, by exaggeration, falsehood, innuendo, or ambiguity as to a material fact, concerning the product

67.   In the alternative, the sale of the subject Microwave bowl by Defendant Target was a deceptive act as defined in the Kansas Consumer Protection Act, K.S.A. § 50-626(b), in that

Defendant willfully failed to state a material fact, or willfully concealed, suppressed, or omitted a material fact when it sold the subject Microwave bowl, namely that:

    a.  the Microwave bowl was not reasonably safe for its intended use, which departed from industry and public safety standards as pled elsewhere herein;

    b.  this was particularly deceitful given the public's reasonable and well-known expectations that a product marketed as a "microwave safe" bowl must be designed and manufactured to be safe for microwave cooking, and

    c.  the microwave bowl had not been adequately tested or evaluated for its performance in foreseeable and intended uses to determine whether it was reasonably safe for the user and consumer.

68.    The sale of the subject microwave bowl by Defendant Target was an unconscionable act or practice as defined in the Kansas Consumer Protection Act, K.S.A. § 50-627, when considering what the supplier knew or should have known, because, among other things and at a minimum, Defendant Target made misleading statements on which consumers such as Plaintiffs were likely to rely on to their detriment and that of their friends or family or others who also used the product.

69.    As a direct and proximate result of the Defendant's violations of the Kansas Consumer Protection Act, Plaintiffs were damaged, and seek all damages allowed pursuant to K.S.A. 50-634(b), including attorney's fees.

70.    Defendant Target's actions, and those of its principals, agents, workers, servants, and/or employees in the design, manufacture, warning, instruction, marketing and sale of the subject microwave bowl, with respect to the consumer transaction pled herein constitute willful, wanton and reckless conduct with respect to the safety of users of its microwave bowls sufficient

to warrant the imposition of punitive damages to punish Defendant and deter others from similar conduct in the future.

WHEREFORE, Plaintiffs pray for Judgment against Defendant on Count III of their Complaint, for a fair and reasonable sum of damages in excess of $75,000, for punitive damages, for interest on any judgment, for their costs herein, for attorneys' fees and for such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**PURSUANT TO LOCAL RULE 40.2, PLAINTIFFS HEREBY REQUEST THAT THE PLACE OF TRIAL OF THIS MATTER BE KANSAS CITY, KANSAS.**

Respectfully submitted,

FIELDS LAW FIRM

*/s/ Benjamin C. Fields*
Benjamin C. Fields          KS   #22209
1600 Genessee Street, Suite 860
Kansas City, Missouri 64102
(816) 659-9970 – telephone
(816) 659-9969 – facsimile
ben@fieldslawkc.com

ATTORNEY FOR PLAINTIFF